### UNITED STATES v. F. S. KELLY FURNITURE CO.

No. 13825.

United States Court of Appeals Eighth Circuit.

Oct. 20, 1949.

Rehearing Denied Dec. 15, 1949.

440

Clifford F. Hansen, Assistant United States Attorney, St. Paul, Minn. (John W. Graff, United States Attorney, St. Paul, Minn., H. G. Morison, Assistant Attorney General; and Alexander M. Campbell, Assistant Attorney General, were with him on the brief), for appellant.

P. A. Burke and Edward L. Boyle, Duluth, Minn. (Fryberger, Fulton & Boyle, Duluth, Minn., were with them on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH, and COLLET, Circuit Judges.

WOODROUGH, Circuit Judge.

On September 26, 1946, the Administrator of the Office of Price Administration filed his complaint against F. S. Kelly Furniture Company of Duluth, Minnesota, a Minnesota corporation engaged in the business of buying and selling furniture, setting forth two causes of action, one for injunction against violation by defendant of the Emergency Price Control Act, 50 U.S. C.A.Appendix, § 901 et seq., and Maximum Price Regulation No. 580, 10 F.R. 3015, issued thereunder, and one for treble damages for defendant's alleged past violations of the Act and Regulation. . Issues were joined, substitutions were made as to the party plaintiff and the case came on for jury trial on December 4, 1947. At that time price control in respect to the business of defendant had been removed and insofar as the suit was for injunction it was abated but the cause was proceeded with as an action for recovery of judgment against defendant on account of alleged over-ceiling charges made by defendant during the period between September 26, 1945, and September 26, 1946, excluding the period of July 1 to 25, 1946, when the price control statute was not operative. The trial of that action, continuing from December 4 to December 10, resulted in a general verdict of the jury in favor of the defendant. The jury also responding to a special interrogatory propounded to it made reply that an overcharge had not been made under Regulation No. 580 and Retail Market Order No. 1. Judgment of dismissal was entered accordingly.

This appeal is taken in the name of the United States to vacate the finding, verdict and judgment and for remand of the case. The appellant contends "that material errors were made during the trial" and that "the finding, verdict and judgment are not supported by any evidence" and it seeks. review upon several "points" extensively argued. But the appellee contends that there was no action taken or ruling made by the trial court adverse to the plaintiff preserved on the trial and which has pre-. sented in the record any question of law reviewable by this court on this appeal. The appellee points out from the record

here that when the evidence taken on the trial was concluded, the plaintiff did not make any request to the court to give to the jury any specific instructions upon any matter of fact or law and on the appeal plaintiff does not predicate error upon any refusal of the court to give requested instructions (other than the requested peremptory instruction) and it does not assert or rely upon any exclusion of testimony by the court. The court gave its instructions to the jury after all the evidence had been taken and arguments of counsel concluded and then inquired of respective counsel whether there were any corrections, omissions or exceptions and was answered by each counsel in the negative. The plaintiff did, before submission of the case to the jury, make a general motion in alternative form that the jury be peremptorily instructed to return a verdict in plaintiff's favor either for the sum of $6410.52 or for the sum of $712.28, and the court replied to that motion, "I think I understand you. The motion for a directed verdict in either amount is overruled. I am going to let the jury decide the very question that is presented by your motion." After the verdict had been returned in defendant's favor no motion was made by plaintiff for a judgment notwithstanding the verdict or for a new trial in accordance with Rule 50(b) of the Federal Rules of Civil Procedure, 28 U.S. C.A., and the appellee insists that no review of the proceedings and judgment should be accorded.

As to the question so raised: It appears that the complaint charged defendant with violation of the Act and Regulation No. 580 in most general terms, specifying only the period within which undefined violations were alleged to have occurred and that the amount of overcharge above ceiling prices made by defendant during the period were known to defendant and would appear from its records, and praying for judgment in treble the amount thereof.

Defendant's answer was equally general in denying violation and praying dismissal of the action.

It may well be that when the action was brought and the pleadings filed it was expected that the specific matters in controversy would be shown and passed on by the court in the injunction suit and that its determination would judicially settle the obligations of defendant as to the maximum prices it could legally charge. But that cause of action having disappeared, the court was left to find out what the specific issues were from the evidence.

Neither the price control act nor Regulation No. 580 directly specified maximum prices at which defendant could legally sell its commodities during the period in question. They prescribed the plan under which such maximum prices were to be arrived at through the cooperation of defendant and the O.P.A. and ascertainment of the prices that had customarily been charged by defendant on a specified base date. The plan was extended by General Retail Order No. 1 (10 F.R. 4238) issued under Section 23 of M.P.R. 580 by the O.P.A. Administrator effective from April 1, 1945, to September 26, 1946, to control the purchasing offices of chains, that is, to "the office warehouse or department of a retail chain which purchases merchandise for distribution * * * to retail outlets which are under common ownership or control with the purchasing office and are subject to M.P.R. 580."

When plaintiff adduced its evidence it appeared that it based its case on the theory that the defendant being subject to M.P.R. 580 had an office, warehouse and department which purchased merchandise for distribution to a chain of nine retail stores situated at nine cities in Minnesota and Wisconsin which were "under common ownership or control" of defendant within the meaning of Section 2 of Retail Order No. 1.[1] The basis of the action was not

---

1. Section 2. Who is covered by this order. This order applies to the purchasing offices of chains. * * * For purposes of this order "purchasing office of a chain" is the office, warehouse or department of a retail chain which purchases merchandise for distribution and furnishes invoices or some other statement of costs to retail outlets which are under common ownership or control with the purchasing office and are subject to M.P.R. 580."

that defendant had sold its goods to consumers at prices over ceiling prices but that as a purchaser of merchandise for distribution through retail outlets under its ownership and control it had marked up its service or handling charges for the articles sold to the retail outlet stores comprising the chain at percentages higher than the maximum of the percentages which it had customarily used on and before the base date of M.P.R. 580, that is, between January 1 and March 19, 1942. Plaintiff had caused computations to be made from defendant's books and introduced figures showing defendant's net costs of certain articles and the amounts in dollars of the claimed excess mark up for "service or handling charges" in respect to those articles without allocating the amounts to the several retail stores. Its computations disregarded all articles as to which charges less than said maximum had been made.

At the conclusion of plaintiff's evidence the defendant moved the court to dismiss the case against it on the ground that the evidence showed that the defendant did not own or control the nine retail stores to which it distributed the articles specified and included in the computations introduced by plaintiff and therefore was not subject to the provisions of M.P.R. 580 or Retail Order No. 1, and was not liable under the complaint. Plaintiff did not claim that there was any proof that defendant owned the nine stores but it argued that it could be inferred from the evidence that defendant controlled them. The court concluded that the evidence adduced by plaintiff showed that defendant neither owned nor controlled six of the stores and it sustained the motion to dismiss.

It observed, however, that defendant did own and control and distribute goods to three retail stores; one at Duluth, another at Hibbing and one at Virginia, and as to those stores defendant was the purchaser for a chain and subject to the provisions of M.P.R. 580 and Retail Order No. 1. Apparently defendant's relation to the other six stores which it did not own or control, was that of a wholesaler selling to stores for resale and to the extent it was such a wholesaler it was subject to the

provisions of M.P.R. 590 (10 F.R. 7717) and was not within the charge of the complaint. The court indicated that if the plaintiff desired to and could adduce evidence to prove violations by defendant in marking up excessive percentages on articles distributed by it to the three stores at Duluth, Hibbing and Virginia, he thought "it is only right and just that the government have the opportunity." The plaintiff indicated that it could make proof of such violation by the defendant in respect to the three stores and at the instance of the plaintiff the court opened up the case only to permit the plaintiff to prove a case against defendant in accord with the complaint in respect to the three stores at° Duluth, Hibbing and Virginia. It imposed the condition that of the testimony already taken only that part pertinent to the narrowed case remaining to be tried should receive consideration.

The plaintiff then adduced evidence to the effect that in the month of February, 1946, defendant had made mark ups for service charge on certain identified articles aggregating $1,749.59 above the maximum amount which plaintiff claimed defendant could lawfully mark up. It then showed that of that amount the sum of $712.28 was attributable to the three stores left in question. It also adduced testimony of its accountants who had audited defendant's accounts for the purposes of the suit that in their opinion the amount of overcharge made by defendant to the three stores would be fairly reflected by a projection of the results of the audit for the month of February to the other months involved. That projection resulted in the total amount of $6,410.52 overcharges to the three stores, and plaintiff's motion for directed verdict in the sum of $6,410.52 was on the basis of the projection.

We think that the record thus outlined does not conclusively show that plaintiff abandoned its claim that all of the nine stores were "under common ownership or control" of defendant. In availing itself of the court's permission to seek a judgment on the basis of defendant's common ownership and control of only three out of the nine stores plaintiff was

not required to take any position that was in conflict with or in contradiction of its broader claim. Therefore it remains open to plaintiff to seek review of the ruling against it dismissing its action on its broader claim that defendant controlled all of the nine stores. Also its motion for directed verdict made at the conclusion of all the evidence preserves to it the right to be heard here on its contention that "the verdict and judgment against it are not supported by any evidence."

The plaintiff sought to establish defendant's ownership or control of the six stores involved in defendant's motion to dismiss by the testimony of Harold Kelly, president of defendant, and Joseph R. Kelly, who was in its employ. They were called by plaintiff for cross examination as adverse witnesses under the statute. They knew exactly who owned, controlled and operated each of the stores and their testimony was unequivocally to the effect that defendant corporation did not own or control any of the six in question. Each was owned by a separate corporation or partnership and was managed and operated independently for the benefit of different owners. The fact that each paid the same percentage to defendant for service charge did not give defendant control over them. We find no circumstances to support a conclusion to the contrary and conclude that the court did not err in eliminating from the case all of the stores except the three owned and controlled by defendant.

Plaintiff's motion for directed verdict in its favor was on the ground that the evidence conclusively proved that the defendant had made a "statement" to O.P.A. pursuant to Retail Order No. 1, referred to as its Base Date Pricing Chart, concerning customary charges, which Pricing Chart established the maximum percentage of net cost charged by it to retail outlets for service on all articles covered by M.P.R. 580 and which fixed the maximum percentage of such charge that could be lawfully applied by defendant to any such article during the period covered by the complaint. Plaintiff's computations of amounts of overcharge in respect to the many identified articles were made by the use of said alleged maximum as a base.

But defendant claimed that plaintiff misconstrued the statements which defendant admitted it made to O.P.A. Defendant's testimony was that it intended to comply with M.P.R. 580 and Retail Order No. 1 and that it made two statements concerning the percentages which it had used customarily during the base period for service charges to all the stores to which it sold, but it claimed that it intended to and did declare only the average of the various percentages of cost which it had used for said mark ups. In its first "statement" dated May 2, 1945, no reference was made to categories of articles but it was stated generally, "The service charges made to stores between January 1st and March 19, 1945, was 13.5. Our charging method is based on gross cost plus 13.5, we retaining discounts." Thereafter on November 6, 1946, it made a second "statement", reciting that it was "for the purpose of explaining and showing the break down of the original filing" in which it declared that the first statement "was the average mark up charged to retail outlets for all categories" (meaning all categories of articles under M.P.R. sold by defendant) and in the second statement it listed 34 categories of articles covered by M.P.R. handled by it and indicated a percentage of mark up made in respect to each category, some of the percentages being higher and some lower than 13.5. The second statement did not identify charges on any particular articles which came within the categories. The testimony of defendant's officer who had signed both "statements" for defendant and was familiar with them was positive to the effect that the intention in both "statements" was to declare only an average of the percentages used by defendant in the mark up for service charge and no figure was stated to show a maximum that had been applied either as to the mass of articles referred to in the first statement or as to particular articles which might be included in the categories listed in the second statement.

Defendant pointed out that the Retail Order No. 1 did not use the words "maximum charges" but said "customary charges" and the object stated in the Order was to keep charges down to such "customary

charges."[2] Defendant thought customary charges were the average charges. What it did was to charge mark ups at different percentage rates, and its officer testified that the average figure shown in the "statement" was maintained through the period, the overcharges being offset by undercharges. He could not show exactly by what method the average was maintained but said it had been done by daily checking.

Though it is obvious enough that no effective regulation of service charges could be maintained unless a maximum charge applicable to each article was in some way firmly established and used for reference in respect to each item of claimed overcharge, the inquiry on the protracted trial included what defendant had done as well as what it should have done. Defendant could not be subjected to treble damages except as provided in the law, and though ignorance of the law could work no exemption from its terms the consequences prescribed for failure to make proper "statements" were not the same as those prescribed for making overcharges above established maximums.

■ Defendant's testimony presented a denial that it made a statement which fixed maximum charges by it for any article and as stated all of plaintiff's computations were made on the theory that such maximum in respect to each article covered by M.P.R. 580 had been so fixed. One of the allegations of the plaintiff's complaint was that "defendant failed to adequately identify commodities on the Base Date Pricing Chart as required by said regulation" and it was not shown that any maximum had been fixed otherwise than by the original and the corrected statements which constituted defendant's Base Date Pricing Chart. The market Order contemplated

corrections to be made in "statements", undoubtedly with retroactive effect, and it may well be that if price controls had continued and this case had proceeded for injunctive relief the confusion as to defendant's allowable maximum charge for any commodity sold by it would have been obviated. But on the pleading and evidence before the court there was no justification for a peremptory instruction for the plaintiff in the amount it specified. The whole basis of plaintiff's claim of overcharge was in dispute and doubt and plaintiff was not prejudiced by the court's submission of the case to the jury. Its instructions were acquiesced in and the verdict of the jury must stand.

Though full consideration has been given to all the points argued for appellant, no error prejudicial to appellant has been found in the record and the judgment is

Affirmed.

2. Section 1. Purpose of this order. Under MPR 580 ceiling prices for the articles covered by the regulation must be figured on the basis of "net cost." It is therefore necessary that each seller under MPR 580 have a purchase invoice for each article, and that the costs shown on such invoices should not be arbitrarily inflated. To ensure that sellers whose merchandise is purchased for them by their central offices or by buying organizations, will in the future receive invoices which contain service or handling charges no greater than those on which their base date markups were figured, this order requires purchasing offices of chains not having uniform pricing orders to supply invoices reflecting service charges no higher than their customary charges on and before the base date of MPR 580.